BARBARA W. KRUGER, PLAINTIFF-RESPONDENT, v.
RICHARD O. KRUGER, DEFENDANT-APPELLANT.

Argued March 8, 1977—Decided July 6, 1977.

*Mr. Monroe Ackerman* argued the cause for appellant (*Messrs. Rudd and Ackerman,* attorneys; *Mr. Neil Braun* on the brief).

*Mr. William E. Ozzard* argued the cause for respondent (*Messrs. Ozzard, Rizzolo, Klein, Mauro and Savo,* attorneys; *Mr. Ozzard* and *Mr. Richard M. Meth,* on the brief).

The opinion of the court was delivered by

SCHREIBER, J.  This appeal projects the issue of whether federal military retirement pay and disability benefits, all conditions precedent to their receipt having been satisfied, are "property" "legally and beneficially acquired" during marriage and, accordingly, subject to equitable distribution upon divorce. *N. J. S. A.* 2A:34–23. This question arose in proceedings instituted by Barbara W. Kruger in March 1973 for a divorce on grounds of extreme cruelty. Her husband, Richard O. Kruger, had counterclaimed for a divorce on grounds of desertion and extreme cruelty.

The parties had been married on May 6, 1950. They had three children, who at the time of the trial were 15, 19 and 21 years old. The defendant had been in the Army between July 1939 and February 1968, when he retired as a Lieutenant Colonel. Subsequently, he had been employed for approximately one year in the securities business for Laidlaw & Co. At the time of the trial in October 1973, he was no longer working because of economic conditions and poor health. However, Mrs. Kruger was engaged as a secretary in the municipal offices of the Borough of Bernardsville. The

trial court, finding that both parties had been guilty of acts of extreme cruelty, granted a divorce to each. The wife was awarded custody of the minor child and $30 weekly support for that child. No alimony was granted.

The trial court found the major assets available for equitable distribution to be the marital home and the husband's interests in the military retirement pay and disability benefits. It ordered that the house be sold and the net proceeds after payment of a mortgage and other joint debts be divided equally. The plaintiff's mother, who had died in 1970, devised the house to her. Thereafter the plaintiff created a tenancy by the entirety with the defendant in the property. As to the monthly military payments of $753 for retirement and $106 for disability, both of which commenced in 1968, the trial court found that, since the parties had been married 213 months during the husband's military career of 343 months, 213/343rds of those benefits was acquired during marriage and subject to equitable distribution. It apportioned those benefits by awarding one-third to the plaintiff and two-thirds to the defendant.

Upon appeal the Appellate Division generally agreed with the trial court's findings and conclusions, except that it believed the apportionment of the military payments should terminate upon the wife's death. 139 *N. J. Super.* 413 (App. Div. 1976). It remanded the case to the trial court to consider the income tax impact attributable to the payments. The case is before us by virtue of a dissent. *R.* 2:2–1(a). The dissenting judge opined that the pension and disability benefits "are income and not capital assets" subject to equitable distribution. *Id.* at 422.

Equitable distribution is to be made of "the property, both real and personal, which was legally and beneficially acquired by them [the husband and wife] or either of them during the marriage." *N. J. S. A.* 2A:34–23. Justice Mountain in *Painter v. Painter,* 65 *N. J.* 196 (1974), after noting that there was no legislative history which illuminated

the legislative intent of this provision, stated that the word "acquired" should be given a comprehensive meaning so as to include gifts and inheritance received by either spouse during marriage. *Id.* at 217. He also concluded that:

We therefore hold the legislative intent to be that *all* property, regardless of its source, in which a spouse acquires an interest during the marriage shall be eligible for distribution in the event of divorce. [*Id.*]

■ ■ The *Painter* holding makes it clear that all personal property, tangible and intangible, in which a spouse acquires an interest is includable. Choses in action, rights and other interests, the benefits of which may be receivable now and in the future are classifiable as intangible personal property. See *N. J. S. A.* 1:1-2 which defines personal property to include "rights and credits." Perhaps the easiest method to utilize in determining whether a particular item is property is to view the financial status of the husband and wife at a particular point in time, generally the date upon which the complaint is filed. *Painter v. Painter*, 65 *N. J.* at 218. That status may be ascertained only by marshalling the economic resources of the parties. A weekly wage represents income, but after its receipt the dollars on hand are an asset. Likewise, a contract entitling a person to a certain number of dollars per week for services to be rendered over a fixed period is a valuable right and an asset, though the receipt of the weekly sum represents income. The equitable distribution provision is not concerned with income but with a person's assets in an economic sense on a date certain.

The *right* to receive monies in the future is unquestionably such an economic resource. In most situations its present dollar value can be computed. See our rule for calculating gross sums in lieu of dower or curtesy or an estate for life or years devised in lieu of dower or curtesy. *R.* 4:63-3. No one would quarrel with the proposition that the recipient of a life estate created by a testamentary or

*inter vivos* trust owned a valuable asset which would be subject to equitable distribution. So, too, if one purchased or acquired an insurance annuity which paid a weekly sum certain to the beneficiary for life, the right to collect those funds would also be considered property subject to distribution. There are many different types of employee benefits, which employees or former employees receive, which everyone would readily admit are assets that have been acquired during employment. Deferred compensation, stock options, profit-sharing and pensions are typical examples.

None of the decisions in this State involving pensions has considered the situation where the husband or the wife during the marriage acquired and is enjoying the pension. In *Pellegrino v. Pellegrino,* 134 *N. J. Super.* 512 (App. Div. 1975), a husband's contribution to a pension prior to his retirement was held to be subject to equitable distribution. *Scherzer v. Scherzer,* 136 *N. J. Super.* 397 (App. Div. 1975), remanded the matter to the trial court to determine what the husband's interest was, prior to retirement, in a corporate pension trust fund. *White v. White,* 136 *N. J. Super.* 552 (App. Div. 1975), involved a situation where the husband had not received and was not eligible as yet for a pension under a non-contributory plan. *Blitt v. Blitt,* 139 *N. J. Super.* 213 (Ch. 1976), found that a vested right to funds under a non-contributory pension plan which accrued during the marriage represented an asset subject to distribution. Each of these cases acknowledged expressly or implicitly that, if the spouse acquired during the eligible period of the marriage a non-forfeitable or vested interest in the pension prior to retirement, that interest was subject to equitable distribution. That principle is sound. In passing, it may be noted that the Pension Reform Act of 1974, 29 *U. S. C.* § 1001 *et seq.* (1975), may have a significant impact in this respect because of its minimum vesting standards, 29 *U. S. C.* § 1053 (1975), which are nonforfeitable, 29 *U. S. C.* § 1002 (19) (1975).

Military retirement pay, as other public employees' statutory pensions, earned because of years of service, is comparable to the pension which a retired employee is receiving under a private plan. Although federal governmental pensions may be eliminated or reduced, *Lynch v. United States,* 292 *U. S.* 571, 54 *S. Ct.* 840, 78 *L. Ed.* 1434, 1439 (1934) (this is also the rule in New Jersey, *see* cases cited in Annot., 52 *A. L. R.* 2d 437, 465–467 (1957)), the employee's interest in such a pension, where all conditions precedent have been satisfied, may properly be designated as property. No sound reason justifies the treatment of this type of interest differently from other types of property, whose value could become worthless in the future, *e. g.,* the corpus of a trust may dry up or a pension plan may become bankrupt.

Authority for the position that a governmental pension may be considered property may be found in decisions in community property states. *Ramsey v. Ramsey,* 96 *Idaho* 672, 535 *P.* 2d 53, 56–57 (1975) ; *In re Marriage of Fithian,* 10 *Cal.* 3d 592, 111 *Cal. Rptr.* 369, 371, 517 *P.* 2d 449, 451, *cert.* den., 419 *U. S.* 825, 95 *S. Ct.* 41, 42 *L. Ed.* 2d 48, reh. den., 419 *U. S.* 1060, 95 *S. Ct.* 644, 42 *L. Ed.* 2d 657 (1974) ; *LeClert v. LeClert,* 80 *N. M.* 235, 453 *P.* 2d 755, 756 (1969). The California Supreme Court in *In re Marriage of Fithian* commented:

In *Lynch v. United States* (1933), 292 *U. S.* 571, 54 *S. Ct.* 840, 78 *L. Ed.* 1434, the court refers to pensions as gratuities in the sense that, so long as they are not vested, the federal government can redistribute or withdraw them at any time according to the discretion of Congress. The reference has no impact on the states' ability to characterize pension rights under local principles of property law. [10 *Cal.* 3d 592, 111 *Cal. Rptr.* at 375, 517 *P.* 2d at 455 n. 14]

■ ■ The former serviceman's accrued interest in that retirement allowance which he has acquired during the marriage should be considered an economic asset when listing the property subject to equitable distribution. Upon distribution the wife's interest, namely, the right to receive

a part of the retirement allowance would be owned by her and could be disposed of by her in the same manner as any other property of that type and her interest would not cease upon her death. Once all eligibility requirements have been met, the interest in the pension has become fixed and is property subject to equitable distribution. Therefore, the full amount of the monthly retirement pay should be considered as property acquired during the marriage. However, it would certainly be appropriate in determining the equitableness of apportionment to consider, in addition to the life expectancy of the parties, a comparison of the duration of the marriage with the entire period during which employee service was performed necessary to create pension eligibility. Therefore the conclusions of the Appellate Division in these respects must be modified.

The contention that the military retirement allowance is subject to federal income tax, 26 *U. S. C.* § 61(a) (11) (1967) and therefore the right to receive that pension is not property misconceives the point — the marshalling of assets as of a certain date. Compare *Stern v. Stern,* 66 *N. J.* 340 (1975), where a similar argument was rejected with respect to accounts receivable when the husband asserted that the receipt of those accounts was subject to the federal income tax and the tax effect should be calculated. *Id.* at 347–348. This is not to say, as stated in *Stern,* that the fact that a tax will be paid may not be a relevant consideration when determining whether a particular distribution is equitable. *Id.* at 348.

The defendant also claims that until the payments are actually received, they are not assignable and are exempt from attachment, levy or seizure. 38 *U. S. C.* § 3101 (1959 and Supp. 1977). This argument is inapposite, for it fails to recognize that he has acquired a property interest — its actual distribution occurring when the payment is made — part of which he may be directed to transmit to his wife. *Cf.* 42 *U. S. C.* § 659 (Supp. 1977).

It appears that the trial court did not consider the income tax impact of Mr. Kruger's retirement pay. We agree with the Appellate Division that the matter should be remanded to reconsider the equitableness of the distribution in the light of that factor and to receive any relevant evidence with respect to the amount of the federal and state income taxes and the effect of the tax upon the parties.

As previously noted, Mr. Kruger is also the recipient of disability benefits of $106 per month. Though not subject to federal income tax deductions, there is no reason why these benefits should be treated any differently from the pension. The claim that disability benefits offset current wages lost because of diminished earning capacity assumes a factual basis that does not exist. There is no proof that the dollar work ability of the pensioner has been reduced to that extent and the amount of military disability benefit does not appear to be so related. 10 *U. S. C.* § 1201 and § 1401 (1975). Furthermore, there does not appear to be any reason to justify a difference between receipt of these payments from a lump sum award, including damages for permanent injury, arising out of a negligence action, *Di Tolvo v. Di Tolvo*, 131 *N. J. Super.* 72 (App. Div. 1974), which is properly classifiable as property subject to equitable distribution. The statute contemplates that the property which is acquired during the marriage shall be subject to equitable distribution, irrespective of the reason for the payment. By this standard the disability benefits are in the same category as the retirement pay.[1]

The defendant challenges the trial court's findings in several other aspects. However, these issues, not raised be-

---

[1]Community property states hold that disability pay is community property subject to division. *In re Marriage of Stenquist*, 133 *Cal. Rptr.* 341, 342 (Ct. App. 1976) ; *Dominey v. Dominey*, 481 *S. W.* 2d 473, 475–476 (Tex. Ct. Civ. App. 1972), *cert.* den. 409 *U. S.* 1028, 93 *S. Ct.* 462, 34 *L. Ed.* 2d 321 (1972) ; *Busby v. Busby*, 457 *S. W.* 2d 551, 554 (Tex. Sup. Ct. 1970).

fore the Appellate Division, do not rise to the stature of plain error. *R.* 2:10–2. In this respect we also note that his brief fails to comply with *R.* 2:6–2(a).

The judgment of the Appellate Division is modified and affirmed as stated herein.

PASHMAN, J., dissenting. I would reverse substantially for the reasons expressed in the dissenting opinion of Judge Botter, reported at 139 *N. J. Super.* 413, 422.

*For modification and affirmance*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, CLIFFFORD and SCHREIBER and Judge CONFORD—6.

*For reversal*—Justice PASHMAN—1.